**CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, Petitioner,**

v.

**The UNITED STATES of America and the Interstate Commerce Commission, Respondents.**

**No. 79–2139.**

United States Court of Appeals, Seventh Circuit.

Argued April 30, 1980.

Decided Aug. 8, 1980.

Robert T. Opal, Chicago, Ill., for petitioner.

Kathleen V. Gunning, I. C. C., Alexandria, Va., for respondents.

Before CUMMINGS and BAUER, Circuit Judges, and EAST, Senior Judge.*

CUMMINGS, Circuit Judge.

The Chicago and North Western Transportation Company (C&NW) has petitioned us to set aside and modify the Corrected Certificate and Decision of the Interstate Commerce Commission entered September 10, 1979 in Docket No. AB–1 (Sub–No. 58) to the extent it provided C&NW could abandon a 38.3 mile branch line of railroad in Minnesota on January 8, 1980, instead of on September 26, 1979, the service date of the Corrected Certificate and Decision. We conclude that such relief is appropriate.

In December 1977 C&NW filed an application under Section 1a of the Interstate Commerce Act (49 U.S.C. § 1a)[1] requesting a certificate of public convenience and necessity permitting abandonment of its Currie branch line between Bingham Lake and Currie, Minnesota. A year later, after a comprehensive investigation, an administrative law judge filed a decision holding that the public convenience and necessity permitted the proposed abandonment and stated that an appropriate certificate of abandonment would be issued. He concluded that his decision would be effective 20 days

from the date of service, the service date being January 16, 1979 (App. A–4—A–7), so that the decision was to become effective on February 5, 1979, when the administrative appeal time would expire under 49 C.F.R. § 1100.98(e). There was no administrative appeal. Under 49 U.S.C. § 10903(c)(2), abandonment after an investigation like that here would take effect "on the 120th day after the issuance of the certificate."

Pursuant to 49 U.S.C. § 10905(b), notice of the Commission's decision to permit abandonment of the Currie line was published in the Federal Register on February 21, 1979. On March 6 Currie Branch Transportation, Inc.[2] filed an offer of financial assistance to continue rail service on a 21-mile segment of the 38.3 mile Currie line. This corporation offered a subsidy of $120,798 for the continuance of the 21-mile segment for one year. In addition, the Minnesota Department of Transportation offered to set aside $480,190 of federal funds for the same project (App. A–14—A–16). Thus 80% of the total subsidy proposal was supported by the Minnesota Department of Transportation and 20% by individual members of Currie Branch Transportation, Inc. As a result, on March 20, 1979, in accordance with 49 U.S.C. § 10905(b)(2)(B), the Commission postponed the issuance of the abandonment certificate until September 24, 1979, six months from the date of that decision (App. A–17—A–18).

Thereafter negotiations ensued between C&NW and Currie Branch Transportation, Inc. during the six-month maximum statutory subsidy negotiation period provided in the decision of March 20, 1979. In early September 1979, Currie Branch Transportation, Inc. withdrew its offer of financial assistance. Therefore, on September 10, 1979 the Commission vacated its decision of March 20 and initially ruled that the abandonment Certificate and Decision would be effective on the September 12 date of service but subsequently corrected the Certificate and Decision so that it would be effec-

* Hon. William G. East, Senior District Judge for the District of Oregon, is sitting by designation.

1. The applicable part of Section 1a is now contained in 49 U.S.C. §§ 10903–10905.

2. This corporation was formed by various users of railroad service on the Currie line.

tive 120 days hence, or on January 8, 1980, which would be almost a year after the original decision permitting abandonment. The added 120 days derived from the 120-day period mentioned *supra* for abandonments to take effect after the issuance of certificates following abandonment investigations. See 49 U.S.C. § 10903(c)(2).

*Mootness*

■ Even though the postponed effective date of January 8, 1980, has passed and the certificate authorizing abandonment of the Currie line has doubtless been issued, the question whether the Commission properly postponed the effective date of the certificate authorizing abandonment of the Currie line for 120 days on top of the previous 180 days provided for consideration of the subsidy offer under 49 U.S.C. § 10905(b)(2)(B) is a recurring one. In this case the Commission has interpreted 49 U.S.C. § 10903(c)(2) as compelling the Commission to postpone the effective date of the certificate in every abandonment proceeding where, as here, an investigation has been conducted, for 120 days even though it had already been postponed six months for subsidy negotiations. We are informed that C&NW has 10 other abandonment proceedings pending before the Commission involving 500 miles and the same problem is expected to arise in those and other proceedings (C&NW Br. 8–9). The joint brief of the United States and Commission does not contradict this assertion nor argue mootness. Since there is a continuing case or controversy about this recurring postponement issue, we will not dismiss the petition for review as moot. *Moore v. Ogilvie,* 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1.

*Exhaustion of Administrative Remedies Was Unnecessary*

■ The September 10 decision of the Commission under review was "By the

Commission, Alan M. Fitzwater, Director, Office of Proceedings" and was signed and sealed by Agatha L. Mergenovich as Secretary of the Commission. The Commission's chairman had delegated to that Director "authority to dispose of procedural matters arising in proceedings [like these] assigned for handling under modified procedure." 49 C.F.R. § 1011.7(3). As the Commission admits, the Director is thus authorized to issue abandonment certificates following subsidy negotiations (Br. 3, n.3). The statutory authority for the Commission's delegation of this authority to the Director is derived from 49 U.S.C. § 10305 and is unchallenged.

The Commission contends that the Director's September 10 procedural decision was not subject to judicial review because an administrative appeal was not taken by the C&NW under 49 U.S.C. § 10325.[3] That Section is captioned "Judicial review—nonrail proceedings" and the C&NW appropriately asserts that it does not apply to rail proceedings. Since Section 10325 refers to Section 10323, which is also limited to rehearings, rearguments or reconsiderations in nonrail proceedings, the C&NW persuasively suggests such reference further buttresses its position. In addition, we note that the only Section mentioned in Section 10323 is Section 10322(b) and it is confined to initial decisions in nonrail proceedings. Moreover, § 10327 covers rehearings, rearguments or reconsiderations in rail carrier proceedings, still another reflection of the Congressional intent to have a dichotomy between nonrail and rail proceedings. As to rail proceedings there is no statutory provision barring court proceedings absent an application for rehearing.

Our conclusion that § 10325 applies only to nonrail proceedings is supported by the

---

**3.** Section 10325 provides as follows:

A civil action to enforce, enjoin, suspend, or set aside an action of the Interstate Commerce Commission taken by a division, individual Commissioner, employee board, or employee delegated to act under section 10305 of this title may be started in a court of the United States only—

(1) on denial of an application for rehearing, reargument, or reconsideration; or

(2) if the application is granted, after a rehearing, reargument, reconsideration or other disposition by the Commission or an appellate division under section 10323 of this title.

Commission's own regulations. Thus 49 C.F.R. § 1100.97 governs administrative appeals in nonrail proceedings, while 49 C.F.R. § 1100.98 covers appellate administrative procedures where railroads are involved. The latter Section in par. (b)(1) permits one administrative appeal of right "from an initial decision of an administrative law judge, individual Commissioner, employee board, division, or panel of the Commission" and does not permit such an appeal in the case of decisions by Commission employees such as Mr. Fitzwater. Indeed when an administrative appeal is authorized by 49 C.F.R. § 1100.98(b)(i), the decision would so state as it did at the end of the administrative law judge's Currie line abandonment decision of December 28, 1978 (App. A–4—A–5), whereas Director Fitzwater's procedural decision of September 10, 1979 (App. A–19—A–20) made no reference to any further administrative proceeding.

Section 1100.98(c)(1) of the regulations provides for discretionary administrative review "of an appellate action made by a review board or division * * * or a decision of a division in the first instance when the requirement of an initial decision was voided," again not involving any employee such as Mr. Fitzwater. Finally, par. (d)(1) provides for petitions to reopen "actions of the entire Commission." In turn 49 C.F.R. § 1100.98(i) only requires exhaustion of administrative remedies before judicial review if an appeal as of right, a discretionary appeal or a petition to reopen is involved under § 1100.98(b), (c) or (d). Therefore, Section 1100.98(i) is inapplicable, so that both under the statute and regulations Director Fitzwater's decision of September 10, 1979 was administratively final for purposes of judicial review.

*This Certificate of Abandonment Was Effective When the September 10 Decision Was Served.*

■ As seen, the Corrected Certificate of Abandonment and Decision decided September 10, 1979 was served on September 26. Issuance thereof had previously been postponed for six months under 49 U.S.C. § 10905(b)(2)(B) because of the subsidy negotiations. The Interstate Commerce Act does not permit the Commission to delay the issuance of a certificate of abandonment for another 120 days at the end of this six-month period. This conclusion flows from our recent decision involving this same carrier in *Chicago and North Western Transportation Co. v. United States,* 582 F.2d 1043 (7th Cir. 1978). There we held that where, as here, a subsidy has been offered in a railroad abandonment proceeding, the issuance of the abandonment certificate cannot be stayed beyond the six months now provided in Section 10905 for negotiating about a reasonable subsidy. We noted that "Congress could [not] have made it any plainer" that the postponement was not to exceed six months (at 1049). There we were considering 49 U.S.C. § 1a(6), but its successor, 49 U.S.C. § 10905(b)(2)(B), similarly provides that after a bona fide subsidy offer, "the Commission shall postpone the issuance of a certificate authorizing abandonment or discontinuance for a reasonable time not to exceed six months * * *." Therefore, we again hold that the Commission cannot withhold an abandonment certificate after the expiration of this six-month period.

Indeed, before "correcting" his September 10, 1979 Certificate and Decision authorizing abandonment of the Currie line, Director Fitzwater had properly provided for an immediate effective date on its September 12, 1979 date of service rather than 120 days from the September 10 date of decision. The original Certificate and Decision was correct because Congress plainly did not intend to have an additional 120 days' delay after subsidy negotiations fell through. This is crystal clear from the following introductory wording of 49 U.S.C. § 10903(c) on which the Commission wrongly relies:

"Except as provided in sections 10905 and 10906 of this title—

"(1) if a certificate is issued without an investigation under section 10904(c) of this title, the abandonment or discontinuance may take effect under the certificate on the 30th day after the issuance of the certificate; or

"(2) if a certificate is issued after an investigation under section 10904(c) of this title, the abandonment or discontinuance may take effect under the certificate on the 120th day after the issuance of the certificate."

As readily seen, the exception clause at the beginning of the provision makes the 120-day period inapplicable in subsidy cases like this covered by 49 U.S.C. § 10905. Through this exception clause Congress made it clear that in abandonment provisions a 120-day delay should occur between issuance of the certificate and the date when abandonment actually takes place only in the absence of an offer of subsidy. Here, before the subsidy offer occurred, the Commission had previously concluded on the merits that public convenience and necessity permitted abandonment of the Currie line because this marginal carrier was losing $6,750 a month in operating the line. As shown in our prior *Chicago and North Western Transportation Co.* case, Congress wanted "to grant relief from the prolonged administrative proceedings that had attended abandonment and discontinuance." 582 F.2d at 1049. That is why it provided for a delay of only six months during the consideration of a reasonable subsidy offer. If an additional 120 days were added, as provided in Director Fitzwater's Corrected Certificate and Decision, it would frustrate the intent of Congress by further delaying a needed abandonment whose merits are not in question.

Even the Commission's March 24, 1976, "Notice—Procedures for Pending Rail Abandonment Cases" (App. A–8—A–13), stated that if a subsidy agreement is not achieved within the six-month period now provided by 49 U.S.C. § 10905(b)(2)(B), "a certificate authorizing the requested abandonment will be issued" (App. A–9). Nothing in the official Notice, the Act or regulations authorized the additional 120 days provided in Director Fitzwater's Corrected Certificate and Decision of September 10, 1979.

---

**4.** The word "order" was used in lieu of "decision" in the January 11, 1978, decision in Dock-

Contrary to its treatment of this Currie line abandonment, the Commission properly ordered in three other C&NW recent abandonment proceedings that the abandonment "certificate and decision [4] shall take effect and be in force on the day it is served." See Certificate and Order in Docket No. AB–1 (Sub–No. 53) (decided January 11, 1978); Certificate and Decision in Docket No. AB–1 (Sub–No. 56) (decided December 13, 1978); Certificate and Decision in Docket No. AB–1 (Sub–No. 40) (decided July 13, 1979). The Commission was simply wrong in discontinuing that interpretation of the statute in its September 10, 1979, Currie line decision.

The September 10, 1979 Certificate and Decision of the Commission is set aside to the extent it provides for an effective date other than its September 26, 1979, date of service, and the Commission is ordered to strike therefrom the words "be effective 120 days from the decided date" appearing in the first two lines of the second ordering paragraph and to insert instead the words "take effect and be in force on the date it is served."